**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**

AMELIA CAZARES, on behalf of herself and all others similarly situated

Plaintiff,

v.

Blinds To Go (U.S.) Inc.,

Defendant.

CLASS ACTION COMPLAINT

Case No. 2:26-cv-01857

## COMPLAINT

1) Plaintiff, AMELIA CAZARES (hereinafter "Cazares"), brings this action on behalf of herself and all other persons similarly situated (hereinafter "Class Members") against Blinds To Go (U.S.) Inc. (hereinafter "Defendant"), and states as follows:

2) Cazares is a visually-impaired and legally blind person who requires screen-reading software to access website content using her computer. Cazares uses the terms "blind" or "visually-impaired" to refer to individuals who meet the legal definition of blindness, including individuals whose best-corrected central visual acuity is 20/200 or less in the better eye or whose visual field in the better eye is limited to 20 degrees or less. Some individuals who meet this definition have limited vision; others have no vision.

3) According to the U.S. Census Bureau's 2024 American Community Survey, as summarized by the American Foundation for the Blind, approximately 9 million people in the United States, including approximately 285,000 individuals living in the State of Wisconsin, are visually impaired.

4) Cazares brings this civil rights action against Defendant for its failure to design, construct, maintain, and operate its Website https://www.blindstogo.com/ (hereinafter "Website"

or “the Website”) to be fully accessible to and independently usable by Cazares and other blind or visually-impaired individuals. Defendant is denying blind and visually impaired individuals throughout the United States equal access to the goods and services Defendant provides to their non-disabled customers through the Website. Defendant’s denial of full and equal access to its Website, and therefore denial of its products and services offered, is a violation of Cazares’ rights under the Americans with Disabilities Act (the “ADA”).

5) The Website provides to the public a wide array of the goods, services, price specials and other programs offered by Defendant. Yet, the Website contains significant access barriers that make it difficult if not impossible for blind and visually-impaired customers to use the Website. In fact, the access barriers make it impossible for blind and visually-impaired users to even complete a transaction on the Website. Thus, Defendant excludes the blind and visually-impaired from the full and equal participation in the growing Internet economy that is increasingly a fundamental part of the common marketplace and daily living. With technological advances in recent years, assistive computer technologies now play an essential role in enabling blind and visually impaired individuals to access digital content, allowing blind and visually-impaired individuals to fully and independently access a variety of services.

6) Blind and visually impaired individuals often rely more heavily on online platforms due to mobility-related barriers. The lack of an accessible website means that visually impaired individuals are excluded from fully experiencing and transacting on the Website and from purchasing goods or services from the Website.

7) Despite readily available accessible technology, such as the technology in use at other heavily trafficked retail websites, which makes use of alternative text, accessible forms, descriptive links, and resizable text Defendant has failed to code core functions of the Website,

including product customization and checkout, so that they can be perceived and operated by screen-reader users. Defendant's sighted customers can independently browse, select, and buy online without the assistance of others. However, visually impaired individuals cannot independently complete a purchase on the Website without the assistance of a sighted person

8) By failing to make the Website accessible to visually impaired individuals, Defendant is violating basic equal access requirements under federal law.

9) Congress provided a clear and national mandate for the elimination of discrimination against individuals with disabilities when it enacted the ADA. Such discrimination includes barriers to full integration, independent living and equal opportunity for persons with disabilities, including those barriers created by websites and other public accommodations that are inaccessible to blind and visually impaired individuals.

10) Cazares has visited the Website on or about April 30, 2026, and most recently on or about September 17, 2026, with the specific intent to purchase customizable shades on the Website. However, the access barriers described herein continuously prevented Cazares from completing that purchase independently. Cazares suffered, and continues to suffer frustration, humiliation, and discrimination as a direct result of Defendant's failure to provide a Website that is fully accessible to, and independently usable by, blind and visually-impaired individuals, in violation of her rights under the ADA.

11) Cazares is currently, and has been continuously, deterred from returning to the Website by her actual knowledge that the barriers she personally encountered on or about April 30, 2026, and again on or about September 17, 2026, remain unremedied. This ongoing deterrence is itself an injury-in-fact independent of any future visit, because Cazares cannot know whether the Website has become accessible without either attempting to use it again, which she reasonably will

not do given her past experiences, or obtaining assurance through this litigation that the barriers have been cured. Notwithstanding this deterrence, Cazares intends to and will return to the Website to purchase customizable shades within thirty (30) days of Defendant's remediation of the access barriers described herein, and periodically thereafter. This concrete and particularized injury – both from Cazares' past inability to complete a purchase and her ongoing deterrence from returning – is actual, imminent, and redressable by the injunctive relief sought herein.

12) Because Defendant's Website is not equally accessible to blind and visually-impaired consumers, it violates the ADA. Cazares seeks a permanent injunction to cause a change in Defendant's policies, practices, and procedures so that Defendant's Website will become and remain accessible to blind and visually-impaired consumers.

## JURISDICTION AND VENUE

13) This Court has subject-matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343(a)(3-)(4), as Plaintiff's claims arise under Title III of the ADA, 42 U.S.C. § 12182, *et seq.*

14) Venue is proper in this district under 28 U.S.C. §1391(b)(1) and (2) because Defendant conducts and continues to conduct a substantial and significant amount of business in this District, and a substantial portion of the conduct complained of herein occurred in this District because Plaintiff attempted to utilize, on at least two occasions, the subject Website within this Judicial District.

15) Defendant is subject to personal jurisdiction in this District. Defendant has been and is committing the acts or omissions alleged herein in the Eastern District of Wisconsin that caused injury and violated rights the ADA prescribes to Plaintiff and to other blind and other visually impaired consumers. A substantial part of the acts and omissions giving rise to Plaintiff's claims

occurred in this District: on at least two separate occasions, Plaintiff has been denied the full use and enjoyment of the facilities, goods and services offered to the general public while accessing Defendant's Website from her home in Milwaukee County. These access barriers that Plaintiff encountered have caused a denial of Plaintiff's full and equal access on at least two occasions in the past and now deter Plaintiff from accessing the Defendant's Website in the future.

16) The United States Department of Justice Civil Rights Division has provided "Guidance on Web Accessibility and the ADA." It states in part, "the Department has consistently taken the position that the ADA's requirements apply to all the goods, services, privileges, or activities offered by public accommodations, including those offered on the web."

17) This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

18) This lawsuit is aimed at providing legally blind users like the Plaintiff with a full and equal experience.

**THE PARTIES**

19) Cazares is and has been at all relevant times a resident of Milwaukee County, State of Wisconsin.

20) Cazares is legally blind and a member of a protected class under the ADA, 42 U.S.C. § 12102(l)-(2), and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 et seq. Her visual impairment substantially limits the major life activity of seeing. Cazares cannot use a computer without the assistance of screen reader software. Cazares has been denied the full enjoyment of the facilities, goods and services of the Website as a result of access barriers on the Website.

21) Defendant, a Delaware Corporation, does business in this State with its principal place of business located at 101 East State Route 4, Paramus, NJ 07652, and is represented by its registered agent, The Corporation Trust Company, located at 1209 Orange Street, Wilmington, DE 19801.

22) Defendant provides to the public the Website, which provides consumers access to an array of goods and services, including, the ability to purchase a variety of custom window coverings and treatments, including wood, faux wood, aluminum, and vertical blinds, cellular, roller, solar, woven wood, Roman, zebra, and skylight shades, shutters, and panel tracks. Consumers across the United States use Defendant's Website to purchase custom window coverings and treatments. Defendant's Website is a place of public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7), as it is a sales establishment operated by Defendant that offers goods and services to the public in the ordinary course of Defendant's retail business, regardless of whether that business is conducted through a physical storefront. The inaccessibility of the Website has deterred, and continues to deter, Cazares from making an online purchase of customizable shades.In addition, and in the alternative, the Website is a service, privilege, and advantage of Defendant's physical places of public accommodation. Defendant operates brick-and-mortar showrooms, which are sales establishments under 42 U.S.C. § 12181(7)(E), and offers in-home design consultations. The Website is the principal means by which consumers access those services: through it, consumers locate Defendant's showrooms, book showroom and in-home design appointments, order free sample kits and catalogs, and purchase the custom window coverings that Defendant's design consultants recommend. Defendant also offers its design-consultation service remotely through the Website's "Chat With a Designer" feature, which invites consumers to connect with a designer online for advice, product

recommendations, or to order samples "no matter where you are." Defendant does not operate a showroom in Wisconsin, and its in-home appointment service is not available in Milwaukee County. Upon information and belief, Defendant's nearest showroom is more than 740 miles from Plaintiff's county. For Plaintiff and other Wisconsin consumers, the Website is therefore the only practical means of obtaining the design services, product samples, and custom window coverings that Defendant offers through its physical places of public accommodation, and the access barriers on the Website deny them the goods and services of those places.

23) Furthermore, neither the "Chat With a Designer" feature nor Defendant's telephone line provides blind and visually-impaired consumers with access that is equal to the access the Website affords sighted consumers. On its face, the chat feature is offered for advice, product recommendations, and sample orders, and Defendant describes its telephone line as a resource for quick design questions or help choosing an appointment; neither is held out as a means of customizing and purchasing products. Sighted consumers can independently browse Defendant's products, configure each option in Defendant's multi-step customization process, review their selections, and complete checkout on the Website at any time. By contrast, a blind consumer relegated to chat or telephone must depend on Defendant's staff to make and confirm selections on her behalf, cannot independently verify that her intended selections have been applied before she pays, must disclose her order and payment details to a third party, and, upon information and belief, is limited to the hours during which Defendant's staff are available. Such alternatives do not provide communication that is as effective as that provided to sighted consumers, and they fail to protect the privacy and independence of blind consumers as the ADA requires. See 28 C.F.R. § 36.303(c)(1)(ii).

**NATURE OF THE CASE**

24) The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, researching, as well as many other activities for sighted, blind and visually-impaired persons alike.

25) Visually impaired individuals access websites by using keyboards in conjunction with screen-reading software which vocalizes visual information on a computer screen. Except for a visually impaired person whose residual vision is still sufficient to use magnification, screen access software provides the only method by which a visually impaired person can independently access the Internet. Unless websites are designed to allow for use in this manner, visually impaired individuals cannot fully access the information, products and services offered online.

26) For screen-reading software to function properly, website content must be capable of being rendered accurately into text. If the website content is not capable of being rendered into text, the visually impaired user is unable to access the same content available to sighted users.

27) Visually impaired users of Windows-enabled computers and devices have several screen-reading software programs available to them. Job Access With Speech, otherwise known as "JAWS", is currently one of the most popular, and downloaded screen-reading software programs.

28) The international website standards organization, the World Wide Web Consortium, known throughout the world as W3C, has published version 2.2 of the Web Content Accessibility Guidelines ("WCAG 2.2"). WCAG 2.2 are well-established guidelines for making websites accessible to blind and visually-impaired persons. These guidelines are widely followed by many large business entities and government agencies to ensure their websites are accessible. Courts and the Department of Justice have frequently looked to the WCAG 2.2 guidelines as a benchmark for website accessibility. The federal government has also promulgated website accessibility standards

under Section 508 of the Rehabilitation Act. These guidelines are readily available via the Internet, so that a business designing a website can easily access them. These guidelines recommend several basic components for making websites accessible, including, but not limited to: adding alt-text to graphics, ensuring that all functions can be performed using a keyboard and not just a mouse, ensuring that image maps are accessible, and adding headings so that visually impaired persons can easily navigate the site. Without these very basic components, a website will be inaccessible to a visually impaired individual using a screen reader. Furthermore, websites must be accessible to users of all proficiency levels, including screen-reader users with minimal technical experience of screen-reading software and need to be able to work with all browsers. Finally, websites need to be continually updated and maintained to ensure that they remain fully accessible.

## FACTUAL ALLEGATIONS

29) Defendant controls and operates the Website in the State of Wisconsin and throughout the United States.

30) The Website is a commercial platform through which consumers can browse and purchase products and services for online sale. The online store allows the user to view custom window coverings and treatments, make purchases, and perform a variety of other functions.

31) Among the features offered by the Website are the following:

a) Consumers may use the Website to connect with Defendant on various social media platforms, including Facebook, Instagram, Pinterest, YouTube, and LinkedIn;

b) An online store that allows customers to purchase a selection of custom window treatments, including blinds, shades, shutters, and drapery

in a variety of styles, materials, colors, and finishes for delivery to their doorsteps; and

c) Learning about shipping and return policies, reading customer reviews, and learning about the company, amongst other features.

32) This case concerns Defendant's policy and practice of denying visually impaired individuals' access to the goods and services offered by the Website. Due to Defendant's failure and refusal to remove access barriers to the Website, visually impaired individuals have been and are being denied equal access to Defendant as well as to the numerous goods, services and benefits offered to the public through the Website.

33) Defendant denies the visually impaired users' access to goods, services and information made available through the Website by preventing them from freely navigating the Website.

34) The Website contains access barriers that prevent free and full use by Cazares and visually impaired individuals using keyboards and screen-reading software. These barriers are pervasive and include but are not limited to: inaccurate alt-text on graphics, ambiguous link texts, and unclear labels for interactive elements.

35) Alternative text ("Alt-text") is invisible code embedded beneath a graphical image on a website. Web accessibility requires that alt-text be coded with each picture so that a screen-reader can speak the alternative text while sighted users see the picture. Many important images on the Website, including product images and images used as liks, lack an accurate, distinguishing text equivalent. The lack of adequate alt-text on these graphics prevents screen readers from accurately vocalizing a description of the graphics (screen-readers detect and vocalize alt-text to provide a description of the image to a visually impaired computer user). As a result, Cazares and

visually impaired individuals are unable to determine what is on the Website, browse the Website or investigate and/or make purchases.

36) When visiting the Website on or about April 30, 2026, and more recently on or about September 17, 2026, using the JAWS screen-reader, Cazares encountered accessibility barriers that denied her full and equal access to the Website and prevented her from completing her intended purchase. The barriers described are not isolated or transient defects but are structural features of the Website's design and coding that affect core functions of the Website, including but not limited to: navigation, product feature selection, and perceiving of non-text content, which render the Website inaccessible to, and not independently usable by blind and visually-impaired persons who use screen-reader software, including Plaintiff and the members of the putative class she seeks to represent.

a) Different images of the same product have similar alternative text. Blind users cannot learn more detailed information about the product and its features;

b) Interactive elements are not programmatically associated with their labels. As a result, screen reader software does not announce their accessible names, making it difficult for blind users to identify the purpose of the interactive elements;

c) Labels of interactive elements do not provide sufficient context to identify their purpose. As a result, blind users cannot clearly determine the function or destination of the interactive elements;

d) Interactive elements are not keyboard focusable. The website has functionality that is dependent onspecific devices, such as a mouse, and is not available to the assistive technology users;

e) When navigating the "Label Product" radio button group using the keyboard, blind users can move between options using the arrow keys. However, after a user selects an option and presses the Tab key to proceed, keyboard focus moves to the last option and automatically selects it. As a result, the user cannot retain the intended selection;

f) Images used as links do not provide descriptive alternative text that identifies the purpose or destination of the links. As a result, blind users cannot determine what information or content is available on the linked pages;

g) Repetitive link text does not provide sufficient context to distinguish between links. As a result, blind users have difficulty identifying the purpose or destination of the links when they are announced separately from their context;

h) Interactive elements do not have accessible names. As a result, blind users cannot identify the purpose or function of the interactive elements;

i) Interactive elements do not expose their role programmatically. As a result, screen reader software cannot announce the type of the interactive elements, making it difficult for blind users to identify their purpose and interact with them correctly;

j) Interactive elements do not expose their current state programmatically. As a result, screen reader software does not announce whether the elements are selected, expanded, checked, or otherwise activated, making it difficult for blind users to determine their current status.

37) Consequently, visually impaired customers are essentially prevented from purchasing any items on the Website.

38) The Website cannot be used to complete a transaction by keyboard alone. Yet, it is a fundamental tenet of web accessibility that for a web page to be accessible to Cazares and visually impaired people, it must be possible for the user to interact with the page using only the

keyboard. Indeed, Cazares and visually impaired users cannot use a mouse because manipulating the mouse is a visual activity of moving the mouse pointer from one visual spot on the page to another. Thus, the Website's inaccessible design, which cannot be operated by keyboard alone to complete a transaction, denies Cazares and visually impaired customers the ability to independently navigate and/or make purchases on the Website.

39) Due to the Website's inaccessibility, Cazares and visually impaired individuals must in turn spend time, energy, and/or money to make their purchases at traditional brick-and-mortar retailers. Some visually impaired customers may require a driver to get to the stores or require assistance in navigating the stores. By contrast, if the Website was accessible, a visually impaired individual could independently investigate products and make purchases via the Internet as sighted individuals can and do. According to WCAG 2.2 Guideline 4.1.2 'Name, Role, Value', the name and role of all user interface components must be programmatically determinable, and their states, properties, and values must be programmatically settable and communicated to assistive technologies. The accessible name of interactive elements (buttons, check boxes, radio buttons, etc.) enables compatibility with assistive technology, such as screen readers, screen magnifiers, and speech recognition software, used by people with disabilities. In case the accessible name and value are not provided, users will not be able to identify the purpose of the form control and the state they are currently in. Thus, Defendant's inaccessible design deprives Cazares and visually impaired customers of the opportunity to make purchases on the Website on their own.

40) The Website thus contains access barriers that deny full and equal access to Cazares, who would otherwise use the Website and who would otherwise be able to fully and equally enjoy the benefits and services of the Website in the State of Wisconsin and throughout the United States.

41) Amelia Cazares has made multiple attempts to complete a purchase on the Website. On or about April 30, 2026, while searching online for window coverings, she found Defendant's website, Blindstogo.com, and decided to explore the Website because she was looking for customizable shades to replace the old window coverings in the home she purchased. She was drawn to Defendant's shades because of the ability to customize the color, dimensions, and other selections to fit her needs. She returned to the Website on or about September 17, 2026, to attempt the purchase again, The Website offered the type of product she was looking for with the customization options she wanted. During each visit, Cazares tried to explore the shades category and purchase the Roller Shades. While exploring the Website, on or about April 30, 2026, and most recently on September 17, 2026, Cazares encountered multiple repetitive "Free Sample" links on the product page, each associated with an available shade color. As a result, she could not determine which shade color each link corresponded to ot distinguish one link from another. In addition, multiple product customization options throughout the multi-step customization process were not programmatically identified as selectable controls, did not communicate their selected or unselected states, and were skipped in the Tab order. As a result, Cazares could not determine that these options were interactive, identify which option was currently selected, or confirm that her intended selections had been applied. Furthermore, when Cazares selected an option from the "Label Product" radio button group and attempted to move forward using the the Tab key, the keyboard focus moved to the last option and automatically selected it. As a result, she could not select and retain the desired option, preventing her from completing the customization process.

42) Amelia Cazares intended to purchase Defendant's shades for her recently purchased home and found Defendant's Website offering customizable options that fit her needs. Cazares liked the ability to customize the color, dimensions, and other selections, and Defendant's Website

was the first website she found that offered the desired product with the customization options she wanted. Cazares wanted to purchase Defendant’s shades for her home because the existing window coverings were old, and she wanted new ones. Cazares’ interest in Defendant’s product was therefore based on her need for new window coverings and the customization options Defendant offered. During each of her visits to the Website, Cazares was unable to complete her purchase because of the accessibility barriers described herein. This directly affected her because she felt frustrated and limited because she wanted to have access to everything that everyone else had access to. Although the experience made her feel more intimidated about using the internet and afraid of how limited her access would be, she remains interested in purchasing the shades from Defendant. Cazares has not returned to the Website since September 17, 2026, because she does not want to experience the frustration she encountered during her previous visits. She has no reason to believe the Website has been fixed. Cazares’ intent to purchase from Defendant is not contingent or speculative: she intends to return to the Website and complete her purchase of Defendant's window coverings, within thirty (30) days of Defendant's remediation of the access barriers described herein, and to return periodically thereafter to purchase shades. Cazares is not using this litigation merely as a vehicle to challenge inaccessible websites in the abstract; she has an actual, product-specific interest in purchasing Defendant's window coverings because she wants new shades for her home and because she believes Defendant offers the customization options she wants.

43) The discriminatory treatment Cazares experienced is reasonably likely to continue absent judicial intervention. Since Cazares’ most recent visit, Defendant has not represented to Cazares, the Court, or to the public that it has remediated, or intends to remediate the access barriers described herein. Upon information and belief, Defendant’s Website continues to lack a

remediation timeline, or other indication that Defendant has taken steps to bring the Website into compliance with the ADA. Absent an order from this Court, Cazares has no assurance that the barriers she personally encountered will not recur or persist indefinitely.

44) Amelia Cazares has articulated a genuine, product-specific interest in Defendant's window coverings, which is rooted in her interest in the product itself, her need for new shades for her recently purchased home, and her desire to benefit from customization options Defendant offers, which are independent of and predatethis litigation, as described above.

45) As described above, Cazares has actual knowledge of the fact that Defendant's Website contains access barriers that render the Website to be inaccessible, and not independently usable by visually impaired individuals.

46) These barriers to access have denied Cazares full and equal access to, and enjoyment of the goods, benefits and services of the Website.

47) Defendant engaged in acts of intentional discrimination, including but not limited to the following policies or practices:

a) constructed and maintained a website that is inaccessible to visually impaired Class Members with knowledge of the discrimination; and/or

b) constructed and maintained a website that, despite being sufficiently intuitive for sighted users, is inaccessible to visually impaired Class Members; and/or

c) failed to take action to correct these access barriers in the face of substantial harm and discrimination against visually impaired Class Members.

48) Defendant utilizes standards, criteria or methods of administration that have the effect of discriminating against or perpetuating the discrimination of others.

49) Because of Defendant's denial of full and equal access to, and enjoyment of, the goods, benefits and services of Blindstogo.com, Plaintiff and the class have suffered an injury-in-fact which is concrete and particularized and actual and is a direct result of Defendant's conduct.

## CLASS ACTION ALLEGATIONS

50) Cazares, on behalf of herself and all others similarly situated, seeks certification of the following nationwide class pursuant to Rule 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure: "all legally blind individuals in the United States who have attempted to access the Website and as a result have been denied access to the enjoyment of goods and services offered by the Website, during the relevant statutory period."

51) There are questions of law and fact common to the Class, including without limitation, the following:

(a) Whether the Website is a "public accommodation" under the ADA;

(b) Whether Defendant, through its Website, denies the full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations to individuals with visual disabilities in violation of the ADA; and

(c) Whether Plaintiff and the Class are entitled to declaratory and injunctive relief, and the nature and scope of that relief.

52) Cazares' claims are typical of the Class. The Class, like Cazares, is composed of legally blind individuals who use screen-reading software, and claims that Defendant has violated the ADA by failing to update or remove access barriers on its Website so it can be independently accessible to the Class.

53) Cazares will fairly and adequately represent and protect the interests of the members of the Class because Cazares has retained and is represented by counsel competent and experienced in complex class action litigation, and because Cazares has no interests antagonistic to the members of the class. Class certification of the claims is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to Cazares and the Class as a whole.

54) Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to Class Members clearly predominate over questions affecting only individual Class Members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

55) Judicial economy will be served by maintaining this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits by individuals with visual disabilities throughout the United States.

**FIRST CAUSE OF ACTION**
***<u>Violation of the Americans with Disabilities Act ("ADA")</u>***

56) Cazares, on behalf of herself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

57) Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12182(a) provides that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." Title III also prohibits an entity from "[u]tilizing standards or

criteria or methods of administration that have the effect of discriminating on the basis of disability." 42 U.S.C. § 12182(b)(1)(D)(i).

58) The Website is a place of public accommodation within the definition of 42 U.S.C. § 12181(7).

59) Defendant is subject to Title III of the ADA because it owns and operates the Website.

60) Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(i), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.

61) Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(ii), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

62) Specifically, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(ii), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

63) In addition, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(iii), unlawful discrimination also includes, among other things, "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise

treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

64) There are readily available, well-established guidelines on the Internet for making websites accessible to the blind and visually-impaired. These guidelines have been followed by other business entities in making their websites accessible, including but not limited to ensuring adequate prompting and focus order. Incorporating the basic components to make their Website accessible would neither fundamentally alter the nature of Defendant's business nor result in an undue burden to Defendant.

65) The acts alleged herein constitute violations of Title III of the ADA, 42 U.S.C. § 12101 et seq., and the regulations promulgated thereunder. Patrons of Defendant who are visually impaired have been denied full and equal access to the Website, have not been provided services that are provided to other patrons who are not disabled, and/or have been provided services that are inferior to the services provided to non-disabled patrons.

66) Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

67) As such, Defendant discriminates, and will continue in the future to discriminate against Cazares and members of the proposed Class on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181 et seq. and/or its implementing regulations.

68) Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Cazares and members of the proposed Class will continue to suffer irreparable harm.

69) The actions of Defendant were and are in violation of the ADA, and therefore Cazares invokes her statutory right to injunctive relief to remedy the discrimination.

70) Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Cazares, requests relief as set forth below.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully demands judgment in favor of Plaintiff and the class and against Defendants as follows:

a) A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq.;

b) A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make the Website into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that the Website is readily accessible to and usable by visually impaired individuals, including but not limited to conformance with WCAG 2.2 Level AA standard, and further requiring Defendant to maintain such compliance on an ongoing basis, including with respect to any future updates, changes, or modifications to the Website;

c) An order requiring Defendant to submit to the Court and Plaintiff's counsel, within sixty (60) days of entry of judgment, and annually thereafter for a period of three (3) years, a written report detailing the specific steps taken to achieve and maintain ADA compliance, accompanied by an audit conducted by a qualified independent accessibility consultant;

d) A declaration that Defendant owns, maintains, and operates the Website in a manner that discriminates against the visually impaired and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. § 12182, et seq.;;

e) An order certifying this case as a class action under Fed. R. Civ. P. 23(a) & (b)(2), appointing Cazares as Class Representative, and her attorneys as Class Counsel;

f) An award of costs and expenses of this action together with reasonable attorneys' and expert fees pursuant to 42 U.S.C. § 12205;

g) An order retaining jurisdiction over this matter for a period of no less than three (3) years following entry of final judgment to ensure Defendant's compliance with the injunctive relief ordered herein, and authorizing Plaintiff to seek enforcement of the Court's orders through contempt or such other remedies as may be available; and

h) Such other and further relief as this Court deems just and proper.

Dated: October 6, 2026

EQUAL ACCESS LAW GROUP, PLLC
*Attorneys for Plaintiff*
**/s/ Alison Chan**
By: Alison Chan, Esq.
Bar No. 77207
4903 Avenue N
Brooklyn, NY 11234
O: 844-731-3343 | D: 929-442-2154
Email: Achan@ealg.law